FILED

Oct 24 2023, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Valerie K. Boots
Public Defender of Indiana

Daniel G. Foote
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Termination of the Parent-Child Relationship of C.C. and De.C. (Minor Children);

D.C. (Mother),

*Appellant-Respondent*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff,*

and

Kids' Voice of Indiana,

*Appellee-Guardian Ad-Litem.*

October 24, 2023
Corrected

Court of Appeals Case No.
23A-JT-848

Appeal from the Marion Superior Court

The Honorable Ryan K. Gardner, Judge
The Honorable Beth L. Jansen, Magistrate

Trial Court Cause Nos.
49D10-2204-JT-3335
49D10-2204-JT-3336

Judges Vaidik and Mathias concur.

**Pyle, Judge.**

## Statement of the Case

[1] In this consolidated appeal, D.C. ("Mother") appeals the termination of the parent-child relationships with her children C.C. ("C.C.") and De.C. ("De.C.") (collectively "the children"). Concluding that the orders terminating Mother's parental rights were void for lack of personal jurisdiction because the Department of Child Services ("DCS") did not properly serve Mother as required by the Indiana Trial Rules and due process, we reverse the trial court's judgment and remand these two cases to the trial court for further proceedings.[1]

[2] We reverse and remand for further proceedings.

## Issue

Whether the orders terminating Mother's parental rights were void for lack of personal jurisdiction because DCS did not properly serve Mother as required by the Indiana Trial Rules and due process.

---

[1] C.C.'s father is unknown, and De.C.'s father died before De.C. was born.

## Facts

[3]     Mother is the parent of son C.C., who was born in April 2020, and daughter De.C., who was born in April 2021. DCS removed C.C. from Mother's care two days after his birth because he had been "born drug exposed" and Mother had lacked safe and stable housing. (Tr. Vol. 2 at 11). The trial court adjudicated C.C. to be a CHINS in December 2020 and ordered Mother to participate in services. DCS removed De.C. from Mother's care two days after De.C.'s April 2021 birth because she had been "born drug exposed" and Mother had lacked safe and stable housing. (Tr. Vol. 2 at 11). Mother admitted that De.C. was a CHINS in August 2021, and the trial court ordered Mother to participate in services.[2]

[4]     In April 2022, the trial court held a permanency hearing in the children's CHINS cases. During the hearing, DCS recommended that the plan for the children be changed from reunification to adoption. Mother did not attend the hearing; however, according to the trial court's permanency hearing order, Mother's counsel attended the hearing and objected to DCS' recommendation. The trial court approved DCS' plan.[3]

---

[2] Although, as set forth below, the trial court took judicial notice of the children's CHINS cases, DCS did not include any of the CHINS documents, including the CHINS petitions, the CHINS dispositional orders, or the CHINS progress reports, in the Exhibits Volume that it tendered to this Court.

[3] We note that although the trial court's permanency plan order included the cause numbers for the children's cases and mentions the children and Mother by name in certain parts of the order, the order further provides as follows: "The permanency plan for [C.] to change to Third party Custody, [Ka.]'s plan to change to adoption and [Ke.]'s plan to change to Guardianship." (App. Vol. 2 at 40). C., Ka., and Ke. are not the

[5]     Later in April 2022, DCS filed separate petitions to terminate Mother's parental relationships with C.C. and De.C. DCS also filed motions to set the initial hearings on the termination petitions. The trial court issued orders scheduling an initial hearing on the termination petitions for May 19, 2022. When Mother was not present at the May 19 initial hearing, the trial court asked DCS if it had served Mother. DCS responded that it did "not have good service yet" and requested a continuance. (Tr. Vol. 2 at 4). The trial court told DCS to "get [its] house in order" and to "be prepared to fish or cut bait with regard to the parents." (Tr. Vol. 2 at 4, 5). The trial court rescheduled the initial hearing for June 16, 2022, but did not mention Mother's right to counsel or ask whether Mother had counsel.

[6]     On June 9, 2022, DCS filed a summons directed to Mother at her home address. The summons provided that an initial hearing on two termination petitions would be held on June 16, 2022. The summons further provided that a process server would serve it. When Mother was not present at the June 16 hearing, the trial court asked DCS if it had served Mother. DCS responded that it had "sent out service and [had] not received . . . anything back[.]" (Tr. Vol. 2 at 6). DCS did not request another continuance for the initial hearing. Rather, DCS requested a "default hearing" in ninety days. (Tr. Vol. 2 at 6). The trial

names of the children in this case. We expect CHINS orders to be correct and to include only the names of the children who are included in those cases.

court scheduled a default hearing for September 15, 2022, but did not mention Mother's right to counsel or ask whether Mother had counsel.

[7]     On September 1, 2022, DCS filed a summons directed to Mother at her home address. The summons provided that a default hearing on two termination petitions would be held on September 15, 2022. The summons further provided that a process server would serve it. On September 9, DCS filed a motion to continue the default hearing because it still did "not have good service for [Mother.]" (App. Vol. 2 at 76). The trial court granted DCS' motion and rescheduled the default hearing for November 17, 2022, but did not mention Mother's right to counsel or ask whether Mother had counsel.

[8]     On September 13, 2022, DCS filed a summons for service by publication. The summons specified that service would be accomplished by publication in the Indianapolis Star once each week for three consecutive weeks. The summons further specified that a virtual hearing would take place on November 17, 2022, and provided a Webex link to the hearing.

[9]     On November 14, three days before the scheduled default hearing, DCS filed another motion to continue the default hearing. In this motion, DCS explained that the "[p]ublication service contained Webex links to the court that no longer work[ed]." (App. Vol. 2 at 85). The trial court granted DCS' motion and rescheduled the default hearing for February 23, 2023, but did not mention Mother's right to counsel or ask whether Mother had counsel.

[10] On December 20, 2022, DCS filed a summons for service by publication. The summons specified that service would be accomplished by publication in the Indianapolis Star once each week for three consecutive weeks. The summons further specified that a virtual hearing would take place on February 23, 2023, and provided a Webex link to the hearing. However, there is no evidence in the record that this summons was published.

[11] On February 13, 2023, DCS sent Mother a ten-day notice of the termination hearing as required by INDIANA CODE § 31-35-2-6.5. DCS sent the statutory notice to Mother's home address.

[12] Four days later, on February 17, 2023, DCS filed a summons directed to Mother at her home address. The summons provided that a default hearing on two termination petitions would be held on February 23, 2023, and provided a Webex link to the hearing. The summons further provided that Mother had a right to counsel. In addition, the summons provided that a process server would serve it.

[13] On February 20, 2023, DCS filed a copy of the summons, which included the following hand-written notation: "[Mother] refused to sign. Served @ St. Vincent Women[']s Hospital on February 18[,] 2023 @ 4:40 p.m." (App. Vol. 2 at 97). "Talia Anderson – DCS" ("Anderson") signed the summons as the process server. (App. Vol. 2 at 97).

[14] Mother did not appear at the February 23, 2023 default hearing. Additionally, Mother was not represented by counsel. At the beginning of the hearing, DCS explained as follows:

> [T]he preliminary matter is this, um, DCS found out that mother's last known address burnt down on the eighth. I was unaware of that, so, we sent a TPR letter out, um, to that address, per statute regulations and um, essentially that was no longer a good address. Um, subsequent to that, you have service that I've, I've sent there that I've submitted to the Court where she was served in the hospital over the weekend with the actual service instead of doing a publication default, we're here for, now, basically, a default with service there. That's where we're at. I don't know if the Court, and she has provided a new address since she was in the hospital. So, I don't know if the Court would still entertain this default. We are ready to go.

(Tr. Vol. 2 at 8).

[15] "[F]or appellate purposes," the trial court asked the Guardian Ad Litem if she objected to proceeding that day. (Tr. Vol. 2 at 9). When the Guardian Ad Litem responded that she did not object, the trial court proceeded with the hearing and took judicial notice of the children's CHINS cases. The trial court also admitted into evidence a copy of the summons with the hand-written notation that Mother had refused to sign it, a copy of the required statutory notice that had been sent to Mother's home address on February 13, 2023, and an affidavit from the Guardian Ad Litem recommending termination of Mother's parental relationships with the children.

[16] Also, during the cursory hearing, DCS family case manager Jessica Rubio ("FCM Rubio") testified that the children had been removed from Mother's

care because the children had been "born drug exposed" and Mother had lacked safe and stable housing. (Tr. Vol. 2 at 11). FCM Rubio further testified that Mother had been personally served while she was in the hospital giving birth to her third child. However, FCM Rubio did not mention who had served Mother or the circumstances of the service. In addition, FCM Rubio testified that DCS had provided services to Mother but that Mother had not completed any of them. According to FCM Rubio, Mother had not been in contact with DCS since June 2022 and was "still struggling with using illegal substances." (Tr. Vol. 2 at 14). When asked if it would "be reasonable to believe that these conditions that led to the removal of these children would be remedied if [M]other were given more time[,]" FCM Rubio responded, "No." (Tr. Vol. 2 at 14). When asked if there would "be a risk of harm to the child if [M]other were allowed to continue a parental relationship with the child[,]" FCM Rubio responded, "Yes." (Tr. Vol. 2 at 14). FCM Rubio further testified that termination was in the children's best interests and that the plan for the children was adoption by a relative.

[17] Anderson did not testify at the termination hearing, and DCS did not seek to admit at the hearing a deposition from Anderson. Further, although it appears that Mother had counsel during the CHINS proceedings, at no point in the termination proceedings did the trial court mention Mother's right to counsel or appoint counsel for Mother.

[18] At the end of the hearing, the trial court found that Mother had received "personal service[]" and had failed to appear at the hearing. (Tr. Vol. 2 at 17).

The trial court stated that it would "be granting um, the termination [and] defaulting [M]other in these proceedings." (Tr. Vol. 2 at 17). In March 2023, the trial court issued orders terminating Mother's parental relationships with the children.

[19] Mother now appeals.

## Decision

[20] At the outset, we note that the Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and to raise her children. *Bester v. Lake County Office of Family and Children*, 839 N.E.2d 143, 147 (Ind, 2005). A parent's interest in the care, custody, and control of her children "'is perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Indeed the parent-child relationship is one of the most valued relationships in our culture." *Bester*, 839 N.E.2d at 147 (cleaned up).

[21] Mother argues that the orders terminating her parental rights were void for lack of personal jurisdiction because the DCS did not properly serve her as required by the Indiana Trial Rules and due process. "Ineffective service of process prohibits a trial court from having personal jurisdiction over a defendant." *Grabowski v. Waters*, 901 N.E.2d 560, 563 (Ind. Ct. App. 2009), *trans. denied*. A judgment rendered without personal jurisdiction violates due process and is void. *Id.* We review a trial court's determination regarding personal jurisdiction de novo. *Munster v. Groce*, 829 N.E.2d 52, 57 (Ind. Ct. App. 2005).

[22] "The question as to whether process was sufficient to permit a trial court to exercise jurisdiction over a party involves two inquiries: whether there was compliance with the Indiana Trial Rules regarding service, and whether the attempts at service comported with the Due Process Clause of the Fourteenth Amendment." *D.L.D. v L.D.*, 911 N.E.2d 675, 679 (Ind. Ct. App. 2009), *trans. denied*.

[23] Here, Mother specifically argues that DCS failed to establish service of process upon her because "the claimed service was not verified by the DCS employee who claims to have served as process serv[]er and did not comply with the applicable Trial Rules." (Mother's Br. 11). We agree.

[24] Indiana Trial Rule 4.12(A) provides as follows:

> Whenever service is made by delivering a copy to a person personally or by leaving a copy at his dwelling house or place of employment as provided by Rule 4.1, summons shall be issued to and served by the sheriff, his deputy, or some person specially or regularly appointed by the court for that purpose. *Service shall be effective if made by a person not otherwise authorized by these rules, but proof of such service by such a person must be made by him as a witness or by deposition without allowance of expenses therefor as costs.* The person to whom the summons is delivered for service must act promptly and exercise reasonable care to cause service to be made.

(Emphasis added).

[25] Neither party has directed us to a case discussing the emphasized portion of this trial rule, and our research has revealed none. We, therefore, turn to rules of

statutory construction, which are applicable to the interpretation of trial rules. *See Carter-McMahon v. McMahon*, 815 N.E.2d 170, 175 (Ind. Ct. App. 2004). Specifically, as with a statute, our objective when construing the meaning of a rule is to ascertain and give effect to the intent underlying the rule. *Id.* Further, where a rule has not previously been construed, the express language of the rule controls the interpretation. *Id.* If the language of a rule is clear and unambiguous, it is not subject to judicial interpretation. *Id.*

[26] Applying these rules of statutory construction to Indiana Trial Rule 4.12(A), we conclude that this rule is unambiguously mandatory. Specifically, the rule states that when a person not otherwise certified by these rules serves a summons, proof of such service "must" be made by the process server as a witness or by deposition. The parties appear to agree that Anderson was not otherwise certified by the trial rules when she served Mother. Further, the parties agree that Anderson was not called as a witness and that DCS did not admit a deposition from Anderson into evidence.

[27] Because DCS failed to comply with the clear and unambiguous language of Trial Rule 4.12(A), either by calling Anderson as a witness or introducing Anderson's deposition into evidence at the termination hearing, service upon Mother was defective under the Trial Rules and the requirements of due process. Accordingly, the trial court did not acquire personal jurisdiction over Mother and the orders terminating Mother's parental relationships with C.C. and De.C. are void.

[28] To the extent that DCS relies on Trial Rule 4.15(F) to support its argument that Mother received adequate service, said reliance is misplaced. Trial Rule 4.15)(F) provides that a defective summons or service thereof shall not be set aside or adjudged insufficient when either is reasonably calculated to inform the person to be served of the action and relevant information. However, the "savings provision" contained in Rule 4.15(F) "is meant to excuse minor, technical defects in the method of service where actual service has been accomplished." *Cotton v. Cotton*, 942 N.E.2d 161, 166 (Ind. Ct. App. 2011) (cleaned up). Trial Rule 4.15(F) "does not cure service of process when there has been no service on a party." *Overhauser v. Fowler*, 549 N.E.2d 71, 73 (Ind. Ct. App. 1990) (cleaned up); *see also LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind. 1993) (explaining that Rule 4.15(F) cures only technical defects in service of process, "not the total failure to serve process."). Here, where there is no statutorily required proof of service and where Mother never appeared before the trial court in the termination proceedings, DCS's complete failure to provide proof of service is not a "minor defect" that can be cured by Trial Rule 4.15(F).

[29] Additionally, though cited by neither party, Trial Rule 4.16(A) provides that "[i]t shall be the duty of every person being served under these rules to cooperate, accept service, comply with the provisions of these rules, and, when service is made upon him personally, acknowledge receipt of the papers in writing over his signature." Trial Rule 4.16 (A)(1) further provides that "[o]ffering or tendering the papers to the person being served and advising the

person that he or she is being served is adequate service." However, where the process server is not called as a witness or her deposition is not admitted into evidence to provide the proof of service required by Trial Rule 4.12(A), Trial Rule 4.16(A) simply does not apply.

[30] Mother also argues that DCS failed to timely serve the ten-day statutory notice of the termination hearing required by INDIANA CODE § 31-35-2-6.5 and that the trial court violated her right to due process when it held the termination hearing without first appointing her counsel. We need not address these issues because we have reversed the trial court's termination of Mother's parental relationships with C.C. and De.C. based upon DCS' failure to properly serve Mother. Nevertheless, we are compelled to note that we agree with Mother that the trial court violated her right to due process when it held the termination hearing without first appointing her counsel. Thus, had we not reversed the trial court on the service of process issue, we would have reversed the trial court because it violated Mother's right to due process when it held the termination hearing without appointing counsel for Mother.

[31] In an action seeking to involuntarily terminate a parent's relationship with her children, the parent is entitled "(1) to cross-examine witnesses; (2) to obtain witnesses or tangible evidence by compulsory process; and (3) to introduce evidence on behalf of the parent[.]" IND. CODE § 31-32-2-3(b). Pursuant to INDIANA CODE § 31-32-2-5, a "parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship." The trial court "shall" appoint counsel for the parent "at the initial hearing or at any earlier time" in a

termination of a parental rights case if the parent "does not have an attorney who may represent the parent without a conflict of interest" and "the parent has not lawfully waived the parent's right to counsel[.]" I.C. § 31-32-4-3.

[32]   Here, our review of the record reveals that Mother was never advised of her right to counsel and therefore could not have waived that right. Indeed, it appears that throughout the proceedings, the trial court ignored Mother's right to counsel. We specifically note that although INDIANA CODE § 31-32-4-3 states that the trial court *shall* appoint counsel for the parent at the initial hearing or at any earlier time, the trial court never held an initial hearing in the termination proceedings. Rather, after continuing the initial hearing one time, the trial court granted DCS' request to proceed directly to a "default hearing." We further note that at the default hearing, the trial court did not mention Mother's right to counsel. Further, FCM Rubio testified at the hearing that Mother had not successfully completed any services and was still struggling with using illegal substances. Because Mother did not have counsel at the termination hearing, Mother was not able to cross-examine FCM Rubio or to present any evidence on her own behalf.

[33]   We have previously explained that "[w]hile the State's interest in Children's welfare and need for permanency are significant, they are not more important than Mother's right to counsel." *In re D.C.*, 201 N.E.3d 660, 665 (Ind. Ct. App. 2022). Here, the record contains no evidence to support a determination that Mother knowingly and voluntarily waived her right to counsel in the termination proceedings. Accordingly, the trial court violated Mother's right to

due process when it held the termination hearing without first appointing her counsel. *See id.* (explaining that where the evidence did not support a determination that the mother had waived her right to counsel in the termination proceedings, the trial court violated the mother's right to due process when it conducted the termination hearing without first appointing counsel for Mother).

[34]  We reverse and remand for further proceedings consistent with Mother's due process rights.

Vaidik, J., and Mathias, J., concur.